## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUNIOR DOE, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 06-CV-1926 |
| | : | |
| ALLENTOWN SCHOOL DISTRICT, | : | |
| et al. | : | |

## MEMORANDUM OPINION & ORDER

**GOLDEN, J.**                                          **SEPTEMBER 21, 2007**

_____ Plaintiffs, three students at Allentown's Central Elementary School ("CES") and their parents and guardians, brought this action under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, as well as Pennsylvania law, alleging violations of their rights to bodily integrity and equal protection of the law, and intentional and negligent infliction of emotional distress by the Allentown School District ("ADS") and Lehigh Valley Hospital ("LVH") through the actions of their employees. The Complaint also named seventeen ASD employees[1] in their official and individual capacities, and two employees[2] of LVH in their individual capacities, which provided healthcare services to CES students and purportedly oversaw healthcare for the district overall.

---

[1] The ASD individual defendants are: Eva W. Haddon, Principal; Bradley Carter, Assistant Principal; Karen S. Angello, Superintendent; Evelyn W. Rossi, Director of Human Resources; Karen J. Boardman, Executive Director of Elementary Education; Diane M. Holben, Director of Research, Planning and Accountability; Rita D. Perez, Director of Professional and Staff Development; Ralph A. Daubert, Executive Director of Community and Student Services; Ralph S. Todd, Executive Director of Instructional Support Services; Deborah Hartman, Director of Special Education; Lourdes Sanchez, School Psychologist; Gerald Brown, Teacher; Amy Enright, Teacher; Lori Friebolin, Teacher; Kim Ceccatti, Guidance Counselor; Catherine Bucks, Teacher; and Jenna Heiland, School Nurse.

[2] The LVH individual defendants are: Peg Perry, School Nurse; and Kathleen E. Coughlin, Social Worker.

Before the Court are five motions, from different defendants, to dismiss plaintiffs' ten-count Complaint under Federal Rule of Civil Procedure 12(b)(6).  The Court denies all five motions to dismiss as to Count 1, brought under the Due Process Clause.  It grants all five motions to dismiss as to Counts 2, 3, and 4, brought under the Equal Protection Clause.  It grants the motions on the claim for negligent infliction of emotional distress (Count 8) as to the Allentown School District, but denies the motion as to Lehigh Valley Hospital.  Finally, it grants the motions to dismiss the claim of intentional infliction of emotional distress (Count 7) as to all defendants who are employees of the Allentown School District or Lehigh Valley Hospital.

## STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows courts to screen out cases "where a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." *Port Auth. v. Arcadian Corp.*, 189 F.3d 305, 311-12 (3d Cir. 1999).  The Third Circuit Court of Appeals instructs that "the complaint will withstand a Fed. R. Civ. P. 12(b)(6) attack if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124-25 (3d Cir. 1998).  In deciding a motion to dismiss, a court is required to accept all of the plaintiff's factual allegations as true. *Hishon*, 467 U.S. at 73.  Thus, a court should grant a motion to dismiss only when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).  In resolving a motion to dismiss, the Court must primarily consider the allegations contained in the Complaint, although matters of public record, orders, and exhibits attached to the Complaint may also be considered. *Pension Benefit*

*Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## FACTS

The facts as alleged in the Amended Complaint describe a series of sexual assaults on the students of CES.  Defendant F.H., a twelve-year old Caucasian boy, transferred to CES at the beginning of the 2003 school year.  (Amd. Compl. at ¶ 39).  Between December 2003 and March 2004, in four separate episodes, F.H. sexually assaulted four first-grade minority boys in bathroom stalls at CES.  (*Id.* at ¶¶ 40, 49, 51, 54).  Three of those boys and their parents and guardians are plaintiffs in this action.

Teachers, administrators, and healthcare providers at CES were informed of events as each of these assaults took place.  A second-grade student witnessed the first assault and alerted a teacher, who immediately questioned F.H. and his victim.  (*Id.* at ¶ 40).  F.H. made what plaintiffs characterize as "admissions" about the attack, and the victim was taken to the school's main office to report the episode.  (*Id.*)  The Complaint alleges that defendants Haddon, Carter, Ceccatti, Coughlin, Sanchez, Heiland and/or Perry were informed about the incident.  (*Id.*)  The ASD and LVH employees did not have F.H. investigated or removed from the school, or take other action.  (*Id.* at ¶ 47).

F.H. subsequently assaulted a second victim; the child fled the bathroom with his pants still lowered, and a teacher discovered him.  (*Id.* at ¶ 49).  Again, the child was taken to the school's office; again, seven individual defendants heard a report of the assault but did not take action beyond an internal investigation.  (*Id.* at ¶ 50).

F.H. then committed a third assault; the victim told his mother, who immediately went to CES to speak with the assistant principal, defendant Carter.  (*Id.* at ¶ 51).  Carter assured her that the

incident would be handled appropriately; the next day, the assistant principal reported the assault to other CES staff, and assured the victim's mother that the case had been referred to the police and that F.H. would be removed from CES.  (*Id.* at ¶¶ 51, 52, 53).  In fact, no report to the police was made and F.H. was not removed from the school.  (*Id.* at ¶ 53).

The final assault took place on March 16, 2004, when F.H. attacked plaintiff Junior Doe in the lower-level bathroom at CES.  (*Id.* at ¶ 55).  Junior Doe alerted his teacher, defendant Bucks, who neglected to report the episode to other school officials.  When class was dismissed, Junior Doe told his father, who had come to CES to pick him up, about the attack.  (*Id.* at ¶ 57).  It was plaintiff's father, John Doe, who ultimately called the police after further inaction by school officials.  (*Id.* at ¶ 58).  Following a police investigation, defendant F.H. was arrested and adjudicated delinquent.  (*Id.* at ¶ 59).

These allegations are the basis for ten counts of constitutional and state tort violations, grounded in the Fourteenth Amendment's Due Process Clause, its Equal Protection Clause, the Pennsylvania Constitution, federal and state statutes and common law.[3]

.

## THE DUE PROCESS CLAUSE CLAIM[4]

The Due Process clause of the Fourteenth Amendment protects the people from the arbitrary

---

[3] The final two counts are asserted against defendant F.H. for assault and battery and false imprisonment. F.H. is also named as a defendant in the counts for intentional and negligent infliction of emotional distress. F.H. does not have a motion before the Court.

[4] The Complaint specifically alleges that the defendants denied the plaintiffs of their right to bodily integrity under both the United States Constitution and Article 1, section 1 of the Pennsylvania Constitution.  The analysis is the same under both constitutions, and thus the Court refers only to the United States Constitution and the Due Process Clause.  *Pa. Game Comm'n v. Marich*, 666 A.2d 253, 255 n.6 (Pa. 1995).

deprivation of "life, liberty, and property, without due process of law" by state governments. *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1993).  The United States Supreme Court recognizes the Due Process Clause as a limitation on government power.  *Id.*  But although the Due Process Clause sets limits on what a state may do *to* the people, it sets no requirements as to what a state must do *for* the people, even when life, liberty, and property are at stake.  *Id.*  The extent and nature of a state's aid to its population is a matter of public policy determined through the democratic process and safeguarded by state legislatures, not a matter of individual rights determined through the Constitution and safeguarded by federal courts.  *Id.*  It is well-settled law that, under the Constitution alone, a state has no duty to protect its people from violence at the hands of private actors.  *Id.* at 197;  *Bright v. Westmoreland County*, 443 F.3d 276, 284 (3d Cir. 2006).

At the same time, however, courts have interpreted the Due Process Clause as keeping the people safe from state-created danger.  That is, although a state is not constitutionally required to provide its population with protection from third parties, a state may not, without risking liability, take affirmative action that renders its citizens more vulnerable to harm than they would have been had the state not acted at all.  *DeShaney, supra* at 201.  This is called the state-created danger theory of liability.  In this judicial circuit, to bring a claim under the state-created danger theory, a plaintiff must establish the following elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger

5

to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Ye v. United States*, 484 F.3d 634 ,638 (3d Cir. 2007)*; Bright,* 443 F.3d at 281.

The motions to dismiss center primarily[5] on the fourth factor in the *Bright* test. The three necessary elements to satisfy the fourth element of a state-created danger claim are that: (1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all.   *Ye,* 484 F.3d at  639 (3d Cir. 2007).  The crucial question in dispute is whether any of the state actors named as defendants in this case took an affirmative action–whether a state actor affirmatively used authority to render Junior Doe and the other minor-plaintiffs more vulnerable than they would have been had the state not acted at all.   Plaintiffs contend the defendants took the following affirmative acts which rendered plaintiffs more vulnerable than they would have been if the state had not acted at all:

•       concealed violent sexual assaults for at least four months;

•       countenanced, veiled, and thereby fostered violence at CES;

•       conspired to cover up the assaults;

•       trivialized the assaults;

•       veiled the assaults and failed to apprise the police, or any other relevant agency, of them;

•       failed to summon emergency medical treatment for the victims;

---

[5] None of the defendants contend that plaintiffs have failed to establish the first and third factors.  The ASD does argue that the plaintiffs have failed to establish the second factor because its employees did not act in a manner that "shocks the conscience."  The Court finds guidance in a similar case involving a school's failure to address ongoing violence against its students, in which a sister court held that lackadaisical school officials shocked the conscience.  *Gremo v. Karlin,* 363 F. Supp. 2d 771, 789 (E.D. Pa. 2005).  Based on this authority and taking the allegations in the Amended Complaint as true, the Court concludes that plaintiffs have established the second factor.

6

- failed to remove F.H., or to isolate him from other students;

- permitted F.H. to remain on school grounds;

- failed to memorialize or document the assaults;

- failed to document the injuries to the students;

- disregarded warnings and evidence of F.H.'s violent behavior;

- covered up repeated acts of violence within certain problematic Allentown schools, including CES;

- failed to follow the disciplinary protocol at CES, pursuant to the Allentown School District Official Code of Conduct;

- failed to train and supervise its administrators and employees adequately;

- failed to address security issues by failing to:

  - address school safety in unmonitored areas, especially common areas, bathrooms, and hallways;

  - enhance school security personnel;

  - enforce school codes of conduct and law enforcement reporting protocols;

  - adequately train school officials;

  - implement school safety and violence prevention curricula;

  - conduct adequate security planning or purchase security technology;

  - provide specialized staff and student training programs;

  - report or notify appropriate law enforcement agencies of the assaults;

  - discipline, isolate, or remove F.H. from the school; and

  - protect students from known or suspected violence.

Amended Complaint at ¶ 69.

Case law establishes that, because the Due Process Clause does not require government aid or action, even "indefensible passivity" by government officials will not create a constitutional violation. *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1376 (3d Cir. 1992). As the Third Circuit has stated, "It is misuse of state authority, rather than failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282.

Unfortunately, precedent does not lack for examples of children in peril and the government officials who let them down. A review of the cases shows, however, that courts have considered, and rejected, allegations similar to many of those in plaintiffs' Amended Complaint for purposes of the state-created danger theory. For example, in a recent case, the Third Circuit considered the constitutional liability of police and county officials who failed to prevent the murder of a young girl, Annette Bright. *Id.* at 278. Annette's killer, Charles Koschalk, had been convicted of corrupting the morals of a minor because of his relationship with Annette's sister. *Id.* Koschalk maintained his relationship with Annette's sister even after his guilty plea for corrupting the morals of a minor; Koschalk and Annette's sister were spotted in public by a probation officer, who recorded the violation. *Id.* A hearing was scheduled on the violation, but not until ten weeks after the report. *Id.* at 279. In June 2001, Annette's father called local police to demand that they arrest Koschalk, who was scheduled to remain free until late August. *Id.* The officers assured Annette's father that they would take action, but did not arrest or otherwise restrain Koschalk. *Id.* Enraged by the family's efforts to keep him away from their older daughter, Koschalk retaliated by killing Annette. *Id.*

After consideration of Supreme Court precedent and the passivity of the police and public officials involved in the case, the Third Circuit held that a state's failure to detain a violent actor does

not constitute an affirmative act for purposes of the state-created danger theory, even when state officials give false assurances that they will protect a family. *Id.* at 283-84. The Third Circuit also rejected the idea that, simply by allowing violent private actors to persist in their illegal or immoral behavior, a municipal or state agency emboldens and encourages the violence. *Id.* at 285.

In a case similar to the case *sub judice*, the Third Circuit held that a school district's failure to train teachers to respond to assaults, or to investigate and stop assaults, are not affirmative actions that can give rise to Due Process liability. *D.R.,* 922 F.2d at 1375-76. Students at Middle Bucks Vocational School brought constitutional and state law actions against school officials who failed to protect them from sexual assaults from their classmates. *Id.* at 1366. The assaults occurred in a unisex bathroom adjacent to a classroom staffed by a student teacher. *Id.* The plaintiffs did not inform their teacher that the assaults were occurring, but claimed that she should have been present in the classroom and aware of the danger. *Id.* While acknowledging the "indefensible passivity," *id.* at 1376, of school officials who failed to stop the "pandemonium," *id.* at 1374, the Third Circuit concluded that the officials were not liable because they had not created the danger to students. *Id.*

Third Circuit precedent also suggests, however, that a school district's efforts to suppress public knowledge of sexual assaults and to dissuade students from reporting abuse may be a basis for liability distinct from liability for the assaults themselves. *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724-25 (3d Cir. 1989). In *Stoneking*, a female student sued her school district and its administrators after experiencing sexual abuse at the hands of a teacher. *Id.* at 722. The student did not assert that the district might be liable because it was somehow responsible for the violent acts of the teacher. *Id.* at 724. Instead, her theory of liability was premised on the school administrators' aggressive efforts to dissuade victims from coming forward and to conceal past abuses from higher

officials.  *Id.* at 725.

     *Stoneking* is different from the instant case because the acts of violence were committed by a state employee, rather than a third party.  The source of liability for the school officials in *Stoneking*, however, was not the violence, but rather their attempt to conceal the violence.  The Third Circuit explicitly stated that:

> [i]t is immaterial for this purpose whether [the teacher's] sexual abuse is viewed as attributable to the state...defendants are liable for their own actions in adopting and maintaining a practice, custom, or policy of reckless indifference to instances of known or suspected sexual abuse of students by teachers, in concealing complaints of abuse, and in discouraging students' complaints about such conduct.

*Id.* at 724-25.  Upon review of the Amended Complaint, this Court observes that the allegations concerning concealment of the assaults might result in liability for the defendants.  Unlike the defendants' passive failures, an active and concerted effort by defendants to conceal crimes against the victims at CES could constitute an affirmative act for purposes of the state-created danger theory.

     In addition, the state may be liable if its actions prevent a "private source of protection" from reaching a plaintiff.  *Kneipp v. Tedder*, 95 F.3d 1199, 1209-10 (3d Cir. 1996).  In *Kneipp,* police separated a husband and wife walking home from a Bucks County bar.  *Id.* at 1201.  After allowing the husband to go home to look after his children, police left the wife, who was visibly intoxicated, to walk home alone.  *Id.* at 1201-02.  Profoundly impaired, the woman was unable to make her way home and fell to the bottom of an embankment; through exposure to the elements, she became brain damaged.  *Id.* at 1203.  The Third Circuit concluded that the police could be liable for plaintiff's injuries because, in separating her from her husband, they actively prevented him from coming to her rescue.  *Id.* at 1210.  Similarly, if the school and hospital employees took affirmative steps to conceal the assaults and to stop colleagues coming forward to serve as a "private source of rescue"

for Junior Doe, they may be held liable under *Kneipp.*

In denying the defendants' motions to dismiss, the Court does not determine that the defendants did cover up the abuse at CES, or that their actions prevented help from reaching Junior Doe.  The Court only determines that these actions may constitute affirmative acts under Third Circuit precedent.  Before the factual record is developed, however, the Court must only decide if there are facts that the plaintiff could prove to establish liability.  Thus, the defendants' motion to dismiss is denied as to Count 1 of the Complaint.  With the above-referenced precedents in mind, however, as this case proceeds through discovery, plaintiffs' counsel must focus on discovering what actions the defendants took, rather than on what actions they failed to take, if they intend their claims in Count 1 to survive a motion for summary judgment.

## THE EQUAL PROTECTION CLAUSE CLAIMS

The plaintiffs bring three claims under the Equal Protection Clause of the Fourteenth Amendment, averring that the school and hospital officials discriminated against them because of their race, socioeconomic class, and age.  Because the plaintiffs do not allege facts, beyond mere legal conclusions, to suggest that the government intentionally classified them for differential treatment, these counts are dismissed.  Because no classification has been alleged in the pleadings, the Court need not conduct a rational basis or strict scrutiny review of the policy.

Adopted in the shadow of the Civil War, the Equal Protection Clause protects individuals from government efforts to intentionally classify and designate disparate groups for disparate treatment.  *Yick Wo v. Hopkins*, 118 U.S. 356, 368 (1886).  To assert a valid equal protection claim, the plaintiff must allege intentional or purposeful discrimination by the defendant.  *See Personnel Adm'r v. Feeney*, 442 U.S. 256, 272 (1979).  A policy's unequal and deleterious impact on a class

of people is not enough, alone, to show purposeful discrimination.[6] *Washington v. Davis,* 426 U.S. 229, 248 (1976).

In the instant matter, the plaintiffs claim that defendants denied them protective services and policies that were made available to AES students who were white, wealthier and older than they are. The plaintiffs do not allege that these disparities were the product of intentional discrimination. Although these disparities may be the product of bad policy or basic unfairness, the Equal Protection Clause does not provide a remedy for disparate impact alone, *Washington,* 426 U.S. at 248. Accordingly, the Equal Protection counts of plaintiffs' Complaint are dismissed.

## THE STATUTORY PROVISIONS

The Constitution describes fundamental rights, but federal statuTes provide the framework through which the people can defend their rights in court. The various statutes that make civil rights suits possible have their own requirements for application, which the defendants argue plaintiffs have not met. The plaintiffs' Due Process and Equal Protection claims against all defendants are brought under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.

The Court agrees that plaintiffs cannot proceed under 42 U.S.C. §§ 1981, 1985, or 1986. The

---

[6]  The plaintiffs assert that a defendant can also be liable for discrimination based on "deliberate indifference" to the treatment of a class of people, which can be shown from a defendant's actions or inactions in light of known circumstances. To support this proposition, they cite *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 646 (1999), which held that Title IX provided a private cause of action against a school district that was deliberately indifferent to the ongoing sexual harassment of elementary school girls, thereby denying female students full access to education. There is no authority from this judicial circuit that uses *Davis* to justify a deliberate indifference standard in racial discrimination cases. Because *Davis* itself is a Title IX case, the Court declines to apply its logic to a matter that does not involve Title IX.

Court holds that the plaintiffs can proceed under 42 U.S.C. § 1983.[7]

***Sections 1985, 1986 and 1981***

To bring a claim under § 1985, a plaintiff must allege that two or more people acted, motivated by a racial class-based animus, to deprive the plaintiff of the equal protection of the laws. *O'Hare v. Colonial Sch. Dist.*, 1999 U.S. Dist. LEXIS 14919, at *19 (E.D. Pa. Sept. 29, 1999) (§ 1985 claim dismissed when the plaintiffs did not assert facts that could show that a student was assaulted due to her membership in a class). A § 1985 claim cannot survive without an equal protection violation, and cannot support a due process violation. *Welsh v. Male*, 2007 U.S. Dist. LEXIS 20267, at *15 (E.D. Pa. Mar. 22, 2007). The text of the statute, which makes no reference to due process claims, supports this view. Thus, because plaintiffs' Equal Protection claim is dismissed, their claim cannot proceed under § 1985.

Claims brought under § 1986 depend on a valid cause of action under § 1985. *Welsh,* 2007 U.S. Dist. LEXIS 20267, at *17. Because plaintiffs' claims cannot proceed under § 1985, their claims cannot proceed under § 1986, either.

The plaintiffs also periodically cite to 42 U.S.C. § 1981 in their Amended Complaint. The defendants rightly point out that § 1981 serves to redeem contract and property rights, which are not at issue in this case. *Brown v. Philip Morris*, 250 F.3d 789, 798 (3d Cir. 2001). Thus, the plaintiffs claims cannot proceed under § 1981.

---

[7] 42 U.S.C. § 1988, to which plaintiffs' refer in their complaint, does not provide an independent cause of action. *Moor v. County of Almeda*, 411 U.S. 693, 702-03 (1973). The section does, however, allow prevailing plaintiffs in civil rights suits to recover attorneys' fees. Thus, although § 1988 is not a cause of action for plaintiffs' claims, it is still relevant to this case.

***Section 1983***

Under 42 U.S.C. § 1983, local government entities may be held liable *only* for employee

actions that are the product of a policy or custom of the local government.  A custom or policy need

not be formally adopted to provoke liability, provided that "the relevant practice is so widespread

as to have the force of law."  *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir.

2004) (quoting *Bd. of the County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404

(1997)).  The plaintiffs claim that ASD and LVH developed a policy of concealing assaults on

students during the four month period when the four separate attacks against Junior Doe and his

classmates unfolded.  The defendants dispute this assertion, and LVH further argues that it has no

policy-making role within the Allentown schools.

The defendants' arguments cannot prevail at this stage in litigation, however, because the

existence of a widespread custom or policy, and a defendant's role in developing that policy, are fact-

sensitive inquiries that cannot be settled through a motion to dismiss.  Thus, while the Court

acknowledges the heavy evidentiary burden that the plaintiffs will have to meet, particularly with

regard to LVH, the Court cannot dismiss the claim.

LVH also argues that its employees did not act "under color of state law," as required by the

statute.  42 U.S.C. § 1983.  LVH is correct in noting that it is not a state agency, and that its status

as a provider of services to the public, alone, is not sufficient to make it an actor under color of state

law.  *Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 711 (3d Cir. 1993) (school bus driver employed

by private contractor did not act under color of state law when he assaulted students).  The Third

Circuit has noted, however, that there are two broadly-defined lines of "state action" cases that

describe when a private party may be held accountable for a constitutional tort as a state actor.  As

the court stated:

> the first category involves an *activity* that is significantly encouraged by the state or in which the state acts as a joint participant...The second category of cases involves an *actor* that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management.

*Leshko v. Servis*, 423 F.3d 337, 340 (3d Cir. 2005).  At this stage of the case, the record does not permit the "necessarily fact bound inquiry" into whether LVH and its employees acted under color of state law according to any of the definitions of state action.[8]  *McKessport Hospital v. The Accreditation Council for Graduate Med. Ed.*, 24 F.3d 519, 523 (3d Cir. 1994); *see also Bryan v. Erie County Office of Children & Youth*, 2006 U.S. Dist. LEXIS 70856, at * 35 (W.D. Pa. Sept. 29, 2006).  Thus, the Court will not dismiss plaintiffs' claims as deficient under § 1983.

**Notice under 42 Pa. Cons. Stat. § 5522(a)**

The ASD argues that plaintiffs' Complaint should be dismissed because they did not provide the notice required under section 5522.  Generally, this statute mandates that a potential plaintiff intending to sue a state agency file a statement with the Attorney General's Office within six months of an actionable injury.  *Id.*  If a plaintiff does not provide notice within six months, the claim is barred.  *Id.*  The rule provides an exception, however, when the state agency has actual or constructive notice of the incident giving rise to the injury.  42 Pa. Cons. Stat. § 5552(a)(3)(iii).  A significant number of ASD employees were aware of the assaults by F.H., at least by the time Junior Doe's father contacted the police in March 2004.  Notably, a number of ASD employees participated

---

[8]     Defendant LVH discusses *Black*, which is a leading case from the Third Circuit on the interplay between private and state entities, at some length.  *Black* itself relies on the Supreme Court's opinion in *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982).  Both cases concern private contractors working in service to a school district.  Although both cases conclude that the private entity did not act under color of state law, both also reached the summary judgment phase of litigation.  Thus, the courts made their determinations concerning § 1983 liability after examining a developed record.

in F.H.'s adjudication proceedings.  Thus, the Court concludes that the ASD had actual notice of the

incidents that injured Junior Doe and his classmates, and the exception to the section 5522 notice

requirement applies.

## QUALIFIED IMMUNITY

The ASD employees named in their individual capacities have asserted that they have

qualified immunity from damages for the alleged constitutional torts.[9]  Qualified immunity protects

government officials from claims for damages for constitutional rights unless the "right was clearly

established at the time of the alleged violations."  *Gremo*, 363 F. Supp. 2d at 791.  The Third Circuit

has stated that "defendants are entitled to qualified immunity if reasonable officials in the

defendants' position at the relevant time could have believed, in light of clearly established law, that

their conduct comported with established legal standard."  *Stoneking*, 882 F.2d at 725.

The first question in determining whether the individual ASD defendants should receive the

protection of qualified immunity is whether they violated the Plaintiffs' constitutional rights–in this

case, whether their actions constituted a violation of the substantive component of the Due Process

Clause via the state-created danger exception.  *See Saucier v. Katz*, 553 U.S. 194, 201 (2001).  As

discussed, *supra*, the Court has decided to grant Plaintiffs a period of discovery on the issue of

whether Plaintiffs can establish the fourth element of a state-created danger claim, i.e., whether any

of the ASD defendants committed an affirmative act which rendered the Plaintiffs more vulnerable

to danger than if the State had not acted at all.  Until that discovery is completed, the Court is unable

to determine whether any of the individual ASD defendants actions constituted a violation of the

---

[9]  The plaintiffs also name the defendants in their official capacities.  The defendants note correctly that these counts "merge" with the counts against the school district, which is the real party in interest. *Irene B. v. Phila. Acad. Charter Sch.*, 2003 U.S. Dist. LEXIS  3020, at *30-32 (E.D. Pa. Jan. 29, 2003).  Thus, the Court dismisses the ASD employees named in their official capacities from the suit.  *Id.*

substantive component of the Due Process Clause.  Accordingly, the Court will deny the individual

ASD defendants' claim to qualified immunity at this time with leave to renew in the form of a

motion for summary judgment after discovery is completed.

## ISSUES OF STATE LAW

The plaintiffs' Complaint includes two counts of state torts:   negligent infliction of

emotional distress and intentional infliction of emotional distress.  Moreover, in a somewhat

confusing section of the pleadings,[10] the plaintiffs have argued that their injuries stem from the

individual defendants' willful misconduct and negligent care, custody, and control of property.

These two assertions are significant because, if the Court found that they were true, the ASD and its

employees would be ineligible for immunity under the Pennsylvania Political Subdivision Tort

Claims Act (PSTCA).  The Court will first address whether the exceptions to immunity apply, and

then consider the substance of the tort counts.

Although plaintiffs may sometimes recover from municipalities for the negligent acts of their

employees, these negligent acts must fit within a group of eight exceptions listed under section 8542

of the PSTCA.  The plaintiffs argue that the so-called "real estate exception" applies in this case,

because their injuries are the result of defendants' care, custody, and control of property.  The school

district, however, correctly points out that the real estate exception is available for injuries caused

by defects in property, not by the behavior of individuals on the property.  *Scott v. Willis*, 543 A.2d

165, 168 (Pa. Commw. Ct. 1988) (citing *Mascaro v. Youth Study Center*, 523 A.2d 1118, 1124 (Pa.

1987)).  Thus, this exception is irrelevant in a case based on assault.

The plaintiffs also argue that the individual defendants' behavior falls within the "willful

_____

[10]   The plaintiffs assert willful misconduct and negligent care, custody, and control of property as counts of their Complaint.  In fact, these allegations are not causes of action, but exceptions to Pennsylvania immunity law.

misconduct" exception to the PSTCA, which abrogates immunity when public employees cause an injury through a crime, actual fraud, actual malice, or willful misconduct. 42 Pa. Cons. Stat. § 8550. The Third Circuit recently endorsed a definition of willful misconduct that requires "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Bright*, 443 F.3d at 287 (quoting *Robbins v. Cumberland County Children & Youth Services*, 802 A.2d 1239, 1253-54 (Pa. Commw. Ct. 2002)). The Third Circuit made clear that willful misconduct is beyond recklessness, deliberate indifference, and the knowing disregard of risks; instead, willful misconduct requires "specific intent." *Id.* In the instant case, the plaintiffs do not suggest that the defendants, however indifferent they may have been to the risks posed by F.H., specifically intended for the children of CES to be endangered and assaulted. Therefore, the conduct of the ASD defendants is not willful misconduct, and does not eliminate their immunity under the PSTCA.

Turning to the specific tort counts, the Court dismisses the count of negligent infliction of emotional distress as to the ASD because it is shielded from liability by the PSTCA. *See June v. Spano*, 2005 U.S. Dist. LEXIS 25681, at *21 (E.D. Pa. Oct. 28, 2005). LVH did not address this tort substantively in its moving papers, and thus the claim survives as to it.[11]

The Court also dismisses the plaintiffs' claims for intentional infliction of emotional distress as to the ASD employee defendants and the LVH employee defendants. The parameters of this tort have never been defined by the Pennsylvania legislature; thus, courts look to previous cases and to scholarship to determine whether intentional infliction of emotional distress occurred in a specific

---

[11]   LVH argued that the Court should dismiss the federal claims, and then decline to exercise supplemental jurisdiction. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Because the Court has not dismissed all federal claims, the supplemental jurisdiction argument is moot.

case.  Generally, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  *Hoy v. Angelone,* 720 A.2d 745, 754 (Pa. 1998) (quoting the Restatement (Second) of Torts).  The case law from this state and others indicates that, even taking the facts as alleged by the plaintiff as true, the behavior of the defendants does not rise to the level of intentional infliction of emotional distress.

In cases involving both sexual assault or harassment and intentional infliction of emotional distress, it is generally only the perpetrator who is considered liable for an intentional infliction claim.  *Compare Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990) (the failure to ameliorate a hostile environment in the workplace was insufficiently outrageous to establish liability) *and Hackney v. Woodring*, 622 A.2d 286, 289 (Pa. Super. Ct. 1993) (persistent sexual advances and touching from an employer could establish liability)*.  In a case analogous to this one, the court concluded that a diocese accused of covering up a priest's abusive past was not liable for intentional infliction of emotional distress because there was no evidence that it intended to cause harm to the ultimate victims of the crime.  *See Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997). These results are not surprising, because the tort is designed to provide compensation only for outrageous acts done for the *purpose* of causing emotional distress.  In the context of sexual assault, typically the assailant alone intends to cause harm.  Here, it was F.H. who sought to harm his classmates.  The plaintiffs do not allege that the defendants, even if they covered up the assaults, did so with the intention that more children would be injured.  Therefore, an action for intentional infliction of emotional distress will not lie.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUNIOR DOE, et al.** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 06-cv-01926** |
| | : | |
| **ALLENTOWN SCHOOL DISTRICT,** | : | |
| **et al.** | : | |

## O R D E R

AND NOW, this 21st day of September, 2007, upon consideration of the outstanding motions to dismiss and after having heard oral argument on the motions, it is hereby ORDERED that:

1.      The motion of the Defendant Lehigh Valley Hospital to Dismiss [Doc. #17] is GRANTED in part and DENIED in part.

2.      The motion of the Defendant Allentown School District to Dismiss pursuant to 12(b)(6) [Doc. #18] is GRANTED in part and DENIED in part:

3.      The motion of the Defendant Peg Perry to Dismiss [Doc. #19] is GRANTED in part and DENIED in part.

4.      The motion of the Defendant Kathleen E. Coughlin to Dismiss [Doc. #20] is GRANTED in part and DENIED in part.

5.      The motion of the Defendant Peg Perry to Dismiss [Doc. #34] is GRANTED in part and DENIED in part.

The motions are DENIED as to Count One of the Amended Complaint (Due Process Clause)

with leave to renew in the form of a motion for summary judgment after discovery is completed.

The motions are GRANTED as to Counts II, III, and IV (Equal Protection Clause) of the Amended Complaint.

Counts II, III, and IV of the Amended Complaint are DISMISSED WITH PREJUDICE.

All claims against all defendants brought under 42 U.S.C. §§ 1981, 1985 and 1986 are DISMISSED WITH PREJUDICE.

Counts V and VI of the Amended Complaint are DISMISSED WITH PREJUDICE as neither count sets forth a theory of recovery, but rather allege exceptions to Pennsylvania immunity law which the Court has reviewed and found to be inapplicable.

The motions are GRANTED as to Count VII of the Amended Complaint (intentional infliction of emotional distress) as to all Defendants who are employees of the Allentown School District or Lehigh Valley Hospital. All claims for intentional infliction of emotional distress contained in Count VII of the Amended Complaint are DISMISSED WITH PREJUDICE as to all Defendants who are employees of the Allentown School District or Lehigh Valley Hospital.

The motions are GRANTED as to Count VIII of the Amended Complaint (negligent infliction of emotional distress) as to the Allentown School District only.  All claims for negligent infliction of emotional distress under Count VIII are DISMISSED WITH PREJUDICE against only the Defendant Allentown School District.

All claims against the individual defendant from the Allentown School District in their official capacities are DISMISSED.  Any defendant who is a state official sued in his or her individual capacity may reassert a qualified immunity defense in the form of a motion for summary judgment after discovery is completed on Count One as detailed in the Opinion.

The LVH defendants may also renew their claim that they did not act under of color of state law in a motion for summary judgment after discovery is completed.

BY THE COURT:


_____ /s/ THOMAS M. GOLDEN
_____THOMAS M. GOLDEN, J.