IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUNIOR DOE, et al. | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  06-cv-1926 |
| ALLENTOWN SCHOOL DISTRICT, et al. | : | |
| | : | |
| | : | |
| Defendants | : | |

GOLDEN, J.                                                                                               FEBRUARY 26, 2009

**MEMORANDUM OPINION & ORDER**

Plaintiffs, three students at Allentown's Central Elementary School ("CES"), brought this action against Allentown School District ("ASD" or "School District") and Lehigh Valley Hospital ("LVH") asserting various federal and state law claims, including one count alleging violations of Plaintiffs' constitutional right to bodily integrity pursuant to 42 U.S.C. § 1983. The Amended Complaint also names seventeen ASD employees ("ASD Individual Defendants") and two employees of LVH, nurse Margaret Perry ("Perry") and social worker Kathleen E. Coughlin ("Coughlin"), who provided healthcare services to CES students and allegedly oversaw healthcare for ASD (collectively, "LVH Individual Defendants").[1] The claims in the Amended Complaint arise out of a series of alleged sexual assaults perpetrated by Defendant F.H.—a twelve-year old boy who transferred to CES at the beginning of the 2003 school year—against

---

[1] In an Order issued on September 21, 2007 (Doc. No. 79), the Court dismissed several counts in the Amended Complaint, including Plaintiffs' claims relating to (a) equal protection, (b) willful misconduct constituting intentional, discriminatory failure to provide adequate protective services, (c) negligent care, custody, or control of real property, (d) intentional infliction of emotional distress (as to the ASD Individual Defendants and the LVH Individual Defendants), and (e) negligent infliction of emotional distress (as to ASD). The Court also dismissed all claims against the ASD Individual Defendants in their official capacities. See Doe v. Allentown Sch. Dist., No. 06-1926, 2007 WL 2814587 (E.D. Pa. Sept. 21, 2007) (Doc. No. 79).

four first-grade boys in bathroom stalls at CES. (Am. Compl. ¶¶ 39, 40, 49, 51, 54).[2] The assaults took place between December 2003 and March 2004. (Id. at ¶ 40). Three of the alleged victims, by and through their parents and guardians, filed the Amended Complaint in this action.

Before the Court is Plaintiffs' Motion for Leave to File a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a). (Doc. No. 93). In lieu of a reply brief in response to Defendants' briefs opposing Plaintiffs' Motion, Plaintiffs filed a draft Second Amended Complaint containing the proposed counts and supporting factual allegations. (Doc. No. 104). Plaintiffs have requested the inclusion of the following additional counts: (a) one sexual discrimination and harassment count against ASD, the ASD Individual Defendants, and LVH pursuant to Title IX, 20 U.S.C. § 1681 *et seq.* (Proposed Second Am. Compl., Count II); (b) separate professional negligence counts against Defendants Perry, Coughlin, and LVH (Proposed Second Am. Compl., Counts III, IV, and V);[3] (c) one general negligence count against F.H.

---

[2] For a more detailed description of the facts alleged in this case, see Doe, 2007 WL 2814587, at *1-2 (Doc. No. 79).

[3] In their Opposition to Plaintiffs' Motion, the LVH Defendants claim that Plaintiffs' request to include these professional negligence counts should be denied because, "[b]y Court Order, all claims for intentional infliction of emotional distress have been dismissed with prejudice" against the LVH Individual Defendants and "Plaintiffs have provided no further explanation of their theory of professional liability or negligence." (LVH Defs.' Opp'n Br. at 3). After Plaintiffs submitted a Proposed Second Amended Complaint including these professional negligence counts along with specific factual allegations, the LVH Defendants did not assert that such claims were futile in their sur-reply brief. Given the doctrinal differences between professional negligence and intentional infliction of emotional distress, along with the LVH Defendants' decision not to assert futility after being presented with Plaintiffs' professional negligence factual allegations, Plaintiffs will be permitted to include these professional negligence claims against the LVH Defendants in their Second Amended Complaint.
    As to Count V of the Proposed Second Amended Complaint alleging that LVH is vicariously liable for professional negligence through the acts of its agents, Perry and Coughlin, LVH claims that Plaintiffs' attempt to collect punitive damages is futile under Pennsylvania's Medical Care Availability and Reduction of Error ("MCare") Act. (LVH Defs.' Sur-reply Br. at 5-6); see 40 Pa. Stat. Ann. § 1303.505(c) (precluding the awarding of punitive damages "against a health care provider who is only vicariously liable for the actions of its agent that causes the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages"). Because Plaintiffs' request to amend the Amended Complaint to seek punitive damages against LVH for professional negligence was withdrawn at oral argument, this

(Proposed Second Am. Compl., Count VI);[4] and (d) one general negligence count against F.H.'s father and F.H.'s mother (Proposed Second Am. Compl., Count VII).[5] Plaintiffs also request permission to add previously-identified minor, "Nicholas Coe," as an additional party plaintiff with respect to all causes of action. (Pls.' Mot. at 2).[6]

The Court has carefully considered the written submissions of the parties, as well as the oral arguments presented to the Court on January 30, 2009 and accompanying supplemental briefs. (Doc. No. 114). For the reasons stated below, Plaintiffs' Motion is granted in part and denied in part.

## STANDARD

Federal Rule of Civil Procedure 15 states that leave to file an amended complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "A party generally should be permitted to amend a complaint where if it did so it could state a claim." Gen. Refractories

---

request is denied as moot.

[4] Defendant F.H. filed, under seal, a Reply Brief to Plaintiffs' Motion for Leave to File a Second Amended Complaint that incorporated the arguments made in the Opposition Briefs of the ASD and LVH Defendants. (Doc. No. 97). Defendant F.H. does not argue that the added negligence count is futile, but rather contends that amendment at this stage would constitute undue delay and be prejudicial. See Berman v. Philadelphia Bd. of Educ., 456 A.2d 545, 549 (Pa. Super. Ct. 1983) ("[M]inors between the ages of seven and fourteen years are presumed incapable of negligence; however, such presumption is rebuttable and grows weaker as the fourteenth year grows closer.").

[5] In proposing this count, Plaintiffs are attempting to add F.H. Mother and F.H. Father as individual defendants in this matter. Currently, F.H. Father and F.H. Mother are only involved as guardians to F.H. Because F.H. Father and F.H. Mother are not parties in this action and no notice of appearance has been filed by counsel on their behalf, the sufficiency of the allegations in this count has not been briefed. Accordingly, the inclusion of this new count will be permitted, and, after being appropriately served by Plaintiffs, F.H. Father and F.H. Mother will be given the opportunity to answer the Second Amended Complaint or otherwise object to the count pursuant to the Federal Rules of Civil Procedure.

[6] At oral argument, LVH, Perry, and Coughlin withdrew their objections to Plaintiffs' claim for negligent infliction of emotional distress.

Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 309 (3d Cir. 2003). "Amendment, however, is not automatic." Butz v. Lawns Unlimited Ltd., 568 F. Supp. 2d 468, 479 (D. Del. 2008). A district court may exercise its discretion to deny the request "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2004); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000). In applying that standard, the Court is mindful of the Third Circuit's teaching that our exercise of discretion should comport with the liberal approach to amendment embodied in the judicial interpretation of Rule 15. See Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 887 (3d Cir. 1992).

**ANALYSIS**

**I.     Undue Delay, Bad Faith, Dilatory Motives, and Prejudice**

Defendants claim that leave to file any amendments to the Amended Complaint should be denied because Plaintiffs have demonstrated undue delay, bad faith, or dilatory motives, and because any amendment would also result in prejudice. Defendants specifically contend that Plaintiffs indicated an intent to file a Second Amended Complaint as early as October 25, 2007, yet failed to seek leave to amend until April 17, 2008, and only provided Defendants with a Proposed Second Amended Complaint on June 6, 2008. (LVH Defs.' Opp'n Br. at 3; ASD Defs.' Opp'n Br. at 4). "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984), cert. denied, 469 U.S.

1122 (1985).

      While there certainly was some delay in Plaintiffs' request to amend the Amended Complaint, this delay was not undue given that discovery has not yet been conducted on the counts in the Amended Complaint, initial disclosures have not yet been exchanged, a scheduling order has not yet been issued by the Court, and a Rule 16 conference has not yet been held.  (Pls.' Br. at 6).  Counsel for all parties also acknowledged at oral argument that a Rule 26(f) conference has not yet been conducted.  See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) ("[D]elay alone is an insufficient ground to deny leave to amend."); Adams, 739 F.2d at 869 ("Since amendment of a complaint is not unusual at the summary judgment stage of the case, we would not characterize plaintiffs' failure to amend their complaint earlier as 'undue delay.'") (internal citation omitted); Achey v. Crete Carrier Corp., No. 07-3592, 2009 WL 101843, at *2 (E.D. Pa. Jan. 14, 2009) (delay was not undue even after defendants had filed motion for partial summary judgment); Bernheim v. Estate of Bedrick, No. 07-2195, 2007 WL 2900377, at *3 n.4 (D.N.J. Oct. 1, 2007) (no undue delay where the "plaintiff filed his motion the same day as the Rule 16 conference and before discovery commenced.").  Because Defendants have only shown the mere passage of time, without establishing that this delay would place an unwarranted burden on the Court or the parties, this delay is insufficient to preclude Plaintiffs from adding claims to the Amended Complaint given the liberal approach to amendment embodied in Rule 15.[7]

---

[7] The LVH Defendants attempt to impute bad faith on the part of Plaintiffs by pointing out that Plaintiffs identified Margaret Perry and Kathleen E. Coughlin as ASD Defendants in the Proposed Second Amended Complaint, when they are actually LVH Defendants.  (LVH Defs.' Sur-reply Br. at 2-3; Proposed Second Am. Compl. ¶ 27).  The LVH Defendants claim that this constitutes an effort by Plaintiffs to "portray Lehigh Valley Hospital Defendants as state actors."  (LVH Defs.' Sur-reply Br. at 3).  This can hardly be considered bad faith.  As

Additionally, no real prejudice would be created if the Court were to grant Plaintiffs' Motion for Leave to File a Second Amended Complaint. See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) ("[P]rejudice to the non-moving party is the touchstone for the denial of an amendment."). As stated above, this case is still in its early stages, as discovery has not yet been conducted. (Pls.' Br. at 6). Defendants have also had the opportunity to brief and fully address the specific allegations made in Plaintiffs' Proposed Second Amended Complaint. See Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 106 F. Supp. 2d 737, 745 (D.N.J. 2000) ("The test for prejudice is whether the non-moving party will be denied 'a fair opportunity to defend and offer additional evidence' to address the amendment.") (quoting Evans Prods. Co. v. West Am. Ins. Co., 736 F.2d 920, 924 (3d Cir. 1984)). Finally, while Plaintiffs' Proposed Second Amended Complaint contains new counts, the underlying facts supporting these new counts are "based on facts similar to those comprising the original [amended] complaint." See Popp Telcom v. Am. Sharecom, Inc., 210 F.3d 928, 943 (8th Cir. 2000); see also Achey, 2009 WL 101843, at *3. Given that this litigation is still in its infancy, Defendants had a fair opportunity to address Plaintiffs' new claims, and the new counts are based on facts already known to Defendants, there is little, if any, prejudice in permitting Plaintiffs to amend their Amended Complaint.

Accordingly, Defendants have failed to show undue delay, bad faith, dilatory motives, or prejudice that would compel the Court to deny Plaintiffs' request to amend the Amended Complaint. As a result, amendment will be permitted unless Defendants can show that amendment would be futile.

---

Plaintiffs' counsel acknowledged during oral argument, this was merely a drafting error. However, this drafting error shall be corrected when Plaintiffs file their Second Amended Complaint with the Court.

**II.     Futility**

"Futility" means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 153 (3d Cir. 2004) (internal quotations omitted). Thus, in assessing "futility," the district court applies the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). Id. at 153-54. Rule 12(b)(6) allows courts to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." Port Auth. of New York and New Jersey v. Arcadian Corp., 189 F.3d 305, 312 (3d Cir. 1999). The Third Circuit Court of Appeals instructs that "the complaint will withstand a Fed. R. Civ. P. 12(b)(6) attack if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery." See Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124-25 (3d Cir. 1998). In deciding a motion to dismiss, a court is required to accept all of the plaintiff's factual allegations as true. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Thus, amendment should be denied when it is "beyond doubt that the plaintiff can prove no set of facts in support of his [new] claim[s] which would entitle him to relief." See Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).

      **A.     Title IX Claim Against Allentown School District**

In Count II of Plaintiffs' Proposed Second Amended Complaint, Plaintiffs allege that ASD and the ASD Individual Defendants (collectively, "ASD Defendants") "were aware that Defendant F.H. committed acts of peer sexual harassment on the minor Plaintiffs and others in the past" and "created a substantial risk of harm of sexual assault of others" by failing "to take

any action to prevent Defendant F.H. from committing such acts on the Plaintiffs." (Proposed Second Am. Compl. ¶ 83, Count II).  According to Plaintiffs, the conduct perpetrated by Defendant F.H. and known to the ASD Defendants created "a hostile educational environment for the minor Plaintiffs" in violation of Title IX of the Education Amendments of 1972.  (Id. at ¶ 84).

The ASD Defendants initially contended that Plaintiffs should not be permitted to amend the Amended Complaint to add this Title IX claim because such an amendment would be futile under the doctrine set forth in Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1 (1981).  The ASD Defendants argued that, under the Sea Clammers doctrine, the proposed Title IX claim could not coexist with the current Section 1983 constitutional claim against ASD (Count I) because the Title IX claim (Proposed Count II) would render the Section 1983 claim superfluous.  (ASD Defs.' Sur-reply Br. at 2, 3-5).  In particular, the ASD Defendants asserted that the proposed amendment should not be permitted because, otherwise, Plaintiffs' Section 1983 claim—which arises out of the same conduct that forms the basis of Plaintiffs' Title IX claim—would be "subsumed" by Plaintiffs' Title IX claim.  (Id.).

In Sea Clammers, the U.S. Supreme Court held that "[w]hen a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983." Sea Clammers, 453 U.S. at 20 (internal quotation omitted).  The Third Circuit Court of Appeals has applied this rule to hold that Title IX claims subsume Section 1983 constitutional claims against school districts and state officials acting in their official capacities.  See Pfeiffer v. Marion Ctr. Area Sch. Dist., 917 F.2d 779, 789 (3d Cir. 1990), overruled by Fitzgerald v.

8

Barnstable Sch. Comm., 129 S. Ct. 788 (2009); see also Williams v. Sch. Dist. of Bethlehem, 998 F.2d 168, 176 (3d Cir. 1993), cert. denied, 510 U.S. 1043 (1994).  The rationale behind the Third Circuit's extension of the Sea Clammers doctrine to Title IX claims was that the remedies provided in Title IX implied that Congress viewed Title IX, not Section 1983, as the exclusive vehicle for redressing violations of civil rights by federally-funded educational institutions.  District courts within the Third Circuit have similarly used this extension of the Sea Clammers doctrine to bar Section 1983 claims where such claims were based on alleged violations of the constitutional right to bodily integrity and brought concurrently with Title IX claims.  See, e.g., Jones v. Indiana Area Sch. Dist., 397 F. Supp. 2d 628, 646 (W.D. Pa. 2005) (dismissing, under Sea Clammers doctrine, Section 1983 claim based on constitutional right to bodily integrity made against school officials in their official capacities); Miller v. Kentosh, No. 97-6451, 1998 WL 355520, at *3 (E.D. Pa. June 29, 1998) (dismissing Section 1983 bodily integrity claims against school officials in their official capacities under Sea Clammers doctrine at motion to dismiss stage).

However, the Third Circuit's extension of the Sea Clammers doctrine to preclude concurrent Title IX and Section 1983 claims was recently overruled by the U.S. Supreme Court's decision in Fitzgerald v. Barnstable School Committee, 129 S. Ct. 788 (2009).  There, the Supreme Court unanimously held that Title IX does not preclude an accompanying Section 1983 action alleging unconstitutional gender discrimination in schools.  In Fitzgerald, the daughter of the plaintiffs was allegedly molested by a boy on a school bus.  Id. at 792.  Based on subsequent investigations conducted by the police and the school, the school's principal concluded that there was insufficient evidence to discipline the boy.  Id.  The school principal proposed some

remedial measures to the plaintiffs, all of which were rejected based on the plaintiffs' belief that these proposals essentially punished their daughter. Id. The plaintiffs countered with proposals of their own, which were not acted upon by the defendant school superintendent. Id. The plaintiffs then began driving their daughter to school so that she would avoid contact with the boy on the bus. Id. The plaintiffs' daughter, however, continued to inform the plaintiffs of additional incidents at school, which were reported to the school principal and ultimately resulted in plaintiffs' daughter missing days of school. Id. The plaintiffs subsequently brought claims against the local school committee under both Section 1983 for violations of the Equal Protection Clause and Title IX. Id. The defendants filed a motion to dismiss plaintiffs' Section 1983 action, which was granted by the district court. Id. at 793. The First Circuit Court of Appeals affirmed and, like the Third Circuit, concluded that the plaintiffs' Title IX claim precluded their Section 1983 action. Id. The Supreme Court reversed and remanded, reasoning that Title IX did not contain a remedial scheme comparable to those at issue in Sea Clammers and other similar cases. Id. at 795-96. The Fitzgerald Court found that, because Title IX's only express enforcement mechanism is an administrative procedure resulting in the withdrawal of federal funding from noncompliant institutions, it must be concluded that "Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for § 1983 suits as a means of enforcing constitutional rights." Id. at 797. After Fitzgerald—as Defendants acknowledged at oral argument—the Sea Clammers doctrine does not render as futile Plaintiffs' effort to amend their Amended Complaint to include a Title IX claim against ASD alongside their existing Section 1983 claim. Therefore, Plaintiffs' request to amend their

10

Amended Complaint to include a Title IX claim against ASD is granted.[8]

However, Plaintiffs' effort to include a claim for punitive damages against ASD in the *ad damnum* clause of the proposed Title IX count is futile.[9]  The School District contends that, as a municipal entity, it is not subject to claims for punitive damages under Title IX.  It is not in dispute that public school districts, like ASD, are considered municipal entities.  See, e.g., Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989).  "The general rule today is that no punitive damages are allowed [against municipalities] unless expressly authorized by statute."  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 261 n.21 (1981); see also Cook County v. United States ex rel. Chandler, 538 U.S. 119, 129 (2003); Flier v. Cayuga County, No. 03-578, 2006 WL 2655698, at *9 (N.D.N.Y. Sept. 15, 2006).  However, while this principle is most often applied to preclude punitive damages against municipalities in the Section 1983 context, district courts within this circuit have held that punitive damages cannot be imposed on a municipality under Title IX.  See, e.g., Dawn L. v. Greater Johnstown Sch. Dist., No. 06-0019, 2008 WL 857453, at *14 (W.D. Pa. Mar. 31, 2008) ("The Court agrees that punitive damages under Title IX are not recoverable against a municipal entity such as the Defendant school district."); Crawford v. Sch.

---

[8] Though Title IX claims may be asserted against school officials in their official capacities, the real party in interest is the school district.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); Irene B. v. Philadelphia Acad. Charter Sch., No. 02-1716, 2003 WL 24052009, at *9 (E.D. Pa. Jan. 29, 2003) ("Since official-capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent, it is appropriate to dismiss the claims against the individual in his official capacity and retain them against the real party in interest.") (internal quotation omitted).  Thus, as in the Court's September 21, 2007 Order (Doc. No. 79), amendment to include Title IX claims against the ASD Individual Defendants in their official capacities will not be permitted.  See Doe, 2007 WL 2814587, at *9 n.9.

[9] It should be noted that, in their supplemental filing in advance of oral argument, Plaintiffs withdrew their request to include a claim for punitive damages against ASD for Title IX violations.  However, at oral argument, Plaintiffs stated that, upon conducting additional research in preparation for oral argument, they wished to, once again, seek punitive damages against ASD as part of their Title IX claim.

Dist. of Philadelphia, No. 98-1851, 1998 WL 288288 at *2 (E.D. Pa. June 3, 1998) (holding, at motion to dismiss stage, that "the plaintiffs may not recover punitive damages from the School District of Philadelphia" under either Section 1983 or Title IX); see also Landon v. Oswego Unit Sch. Dist. No. 308, 143 F. Supp. 2d 1011, 1013 (N.D. Ill. 2001) (holding that "the considerations of common law history, public policy, and Supreme Court precedent do not support exposing a municipality to punitive damages for the misconduct of its officials pursuant to Title IX").[10] The Court agrees with the reasoning of these courts and therefore holds that it would be futile to permit Plaintiffs to include a claim for punitive damages as part of their Title IX claim against ASD.[11]

Furthermore, Plaintiffs' request to add Title IX claims against the ASD Individual Defendants in their individual capacities is denied as moot, as Plaintiffs withdrew this request at oral argument. See, e.g., Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 611 (8th Cir. 1999) ("Several circuits have held that because they are not grant recipients, school officials may not be sued in their individual capacity under Title IX."); Nelson v. Temple Univ., 920 F. Supp. 633, 636-38 (E.D. Pa. 1996) (holding that Title IX did not support a cause of action against an

---

[10] At oral argument, Plaintiffs cited Hurd v. Delaware State Univ., No. 07-117, 2008 WL 4369983 (D. Del. Sept. 25, 2008) (Thynge, M.J.) in support of their contention that the School District can be held liable for punitive damages pursuant to Title IX. In Hurd, the plaintiff filed a Title IX complaint against Delaware State University ("DSU"). Id. at *1. The district court ultimately held at the summary judgment stage that a question of fact remained as to whether DSU's conduct or failure to respond to the plaintiff's allegations constituted malice or reckless indifference sufficient to impose punitive damages. Id. at *5-6. Hurd, however, does not change the rule that punitive damages are generally not recoverable against a municipality, and Plaintiffs do not dispute ASD's status as a municipal entity. See Dawn L., 2008 WL 857453, at *14; see also Hooper v. North Carolina, 379 F. Supp. 2d 804, 811 (M.D.N.C. 2005) (dismissing plaintiff's claim for punitive damages under Title IX against North Carolina Central University).

[11] Plaintiffs' existing claim for punitive damages against ASD for Section 1983 violations remains, as this claim is not related to Plaintiffs' pending motion to amend. ASD can address Plaintiffs' Section 1983 punitive damages claim in a motion for summary judgment.

individual who was the administrator of student organizations and activities at a university).[12]

### B.   Title IX Claim Against Lehigh Valley Hospital

At oral argument, Plaintiffs stated that they are also asserting a Title IX claim against LVH. It is worth noting that Plaintiffs' proposed Title IX count does not even mention LVH, Perry, or Coughlin, nor does Plaintiffs' Motion for Leave to File a Second Amended Complaint state that they are making a Title IX claim against LVH. Rather, Plaintiffs' Motion explains that their Title IX allegations are made only against "the School District of the City of Allentown and individual School District employees." (Pls.' Mot. at 2). Plaintiffs contended during oral argument that their Proposed Second Amended Complaint should be read to make out a Title IX claim against LVH by virtue of the Complaint's assertion that LVH "functioned under *color of state law*, as the entity responsible for health care, medical care, education, social services, and associated treatment within certain schools of Allentown School District." (Proposed Second Am. Compl. ¶ 7) (emphasis added). In further support of their Title IX claim against LVH, Plaintiffs cited the following language from their Proposed Second Amended Complaint: (1) the clause in Plaintiffs' proposed Title IX count incorporating by reference acts stated earlier in the Complaint engaged in by LVH (Id. ¶ 75);[13] and (2) the "Wherefore" clause of Plaintiffs' proposed Title IX count seeking judgment against "Defendant Allentown School District, *jointly*

---

[12] The Court need not address the ASD Defendants' argument that, to the extent that the parents of the minor Plaintiffs are asserting a Title IX claim in their individual capacities, they should be precluded from doing so because they lack standing. (ASD Defs.' Sur-reply Br. at 3). According to the case caption and allegations in both the Amended Complaint and the Proposed Second Amended Complaint, the parents are only acting as representatives of the minor Plaintiffs. Furthermore, Plaintiffs' counsel stated at oral argument that Plaintiffs' parents are not asserting a Title IX claim in their individual capacities.

[13] Plaintiffs have not alerted the Court as to which factual allegations made earlier in the Proposed Second Amended Complaint against LVH fit the elements of a Title IX claim.

*and severally with other named Defendants*," for damages.  (Id., Proposed Count II).

The Court does not read Plaintiffs' proposed Title IX count as asserting a claim against LVH.  However, now taking Plaintiffs at their word that they are asserting a Title IX claim against LVH based on their representations during oral argument, such a claim does not survive a futility analysis.  Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination *under any education program or activity receiving Federal financial assistance*."  20 U.S.C. § 1681(a) (emphasis added).[14]  By Title IX's own terms, even if LVH is found to have acted under color of state law, such a finding, by itself, would not be sufficient to impose liability.[15]  Indeed, the Court is required to further inquire into whether LVH runs a program or activity involving "education" and receives "federal financial assistance."  See O'Connor v. Davis, 126 F.3d 112, 117 (2d Cir. 1997) ("[W]e think it evident that in order to implicate Title IX in the first instance, an entity must have features such that one could reasonably consider its mission to be, at least in part, educational."), cert. denied, 522 U.S. 1114 (1998); 20 U.S.C. § 1687 (stating that, to qualify as a "program or activity," any part of this entity must be "extended Federal financial assistance").  The Proposed Second Amended Complaint does allege that LVH provides educational services, see Proposed Second Am. Compl. ¶ 7, but makes no mention of LVH receiving "federal financial

---

[14] Title IX defines a "program or activity" as all of the operations of, among other things, "a department, agency, special purpose district, or other instrumentality of a State or of a local government."  20 U.S.C. § 1687(1)(A) (emphasis added).

[15] In response to LVH's initial motion to dismiss, the Court concluded that, at such an early stage, the record was not sufficiently developed to permit an inquiry into "whether LVH and its employees acted under color of state law."  Doe, 2007 WL 2814587, at *8 (Doc. No. 79).

assistance."[16]  Though LVH may, in fact, receive federal funds, the Court cannot speculate as to whether this is the case.  Accordingly, the Court infers that Plaintiffs are attempting to place LVH in the shoes of a federal funds recipient by virtue of LVH's relationship with ASD—an entity that receives federal funds—as the provider of healthcare to students within the School District.

A bare allegation that an entity contracts with a school district is insufficient to constitute an assertion that the entity receives federal funds.  As the U.S. Supreme Court held in the context of Section 504 of the Rehabilitation Act of 1973—which is similar to Title IX[17]—an entity that is a beneficiary of the federal funds received by another is not considered a federal funding recipient unless the entity is "in a position to accept or reject [their] obligations as part of the decision whether or not to 'receive' federal funds."  See Dep't of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597, 605-06 (1986).  Similarly, the Third Circuit Court of Appeals has concluded that, in determining whether an indirect recipient of federal funds is covered by the statute, a court should consider, among other things, "the degree to which the entity is able to control decisions made with respect to the money, the most important decision being whether the grant money should be accepted at all."  Smith v. Nat'l Collegiate Athletic Ass'n, 266 F.3d 152, 161 (3d Cir. 2001).  Plaintiffs, however, have pleaded no facts in their Proposed Second Amended Complaint suggesting that LVH has a relationship with ASD enabling LVH to control

---

[16] The Proposed Second Amended Complaint alleges that ASD is an educational institution that receives federal financial assistance.  (Proposed Second Am. Compl. ¶¶ 33, 76).

[17] The Third Circuit Court of Appeals has stated that "Section 504 prohibits discrimination based on disability in substantially the same terms that Title IX uses to prohibit gender discrimination."  See Smith v. Nat'l Collegiate Athletic Ass'n, 266 F.3d 152, 161 n.7 (3d Cir. 2001).

the decisions made with respect to ASD's federal funding.  See J. v. Sch. Dist. of Philadelphia, No. 06-3866, 2007 WL 1221216, at *4-5 (E.D. Pa. Apr. 25, 2007) (dismissing Rehabilitation Act claim at Rule 12(b)(6) stage where plaintiff "pleaded no facts suggesting Community Council has a relationship with the School District enabling it to control the decisions made with respect to the District's federal funding").

Furthermore, in cases that do not involve official policy of the recipient entity, "a damages remedy will not lie under Title IX unless an official who at a minimum *has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf* has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998) (emphasis added); see also Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 646-47 (1999) ("We thus conclude that recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is *under the school's disciplinary authority*.") (emphasis added).  Plaintiff's proposed Title IX count does not make any allegation that LVH is, pursuant to 20 U.S.C. § 1682, an "appropriate person" with authority to take corrective action to end the alleged discrimination within the School District.  See Williams v. Bd. of Regents of Univ. Sys. of Georgia, 477 F.3d 1282, 1293-94 (11th Cir. 2007) (affirming dismissal of Title IX claim at 12(b)(6) stage where plaintiff "failed to allege that [defendant university president] has authority to take action to change the policies of the Board of Regents"); Frederick v. Simpson College, 149 F. Supp. 2d 826, 836-37 (S.D. Iowa 2001) (discussing the minimal level of authority requirement in Gebser).  Despite Plaintiffs' contentions, having an affiliation with a federally-

funded educational institution is simply not enough to impose Title IX liability.  Given these deficiencies in Plaintiffs' Proposed Second Amended Complaint, Plaintiffs' proposed Title IX claim against LVH is futile.[18]

An appropriate Order follows.

---

[18] At oral argument, Plaintiffs cited Piascik v. Cleveland Museum of Art, 426 F. Supp. 779 (N.D. Ohio) in support of their claim that LVH can be held liable under Title IX.  In Piascik, the plaintiff brought a Title IX action against the Cleveland Museum of Art ("Museum") alleging that the Museum had rejected her application for employment as a security guard because of her sex.  Id. at 780-81.  The Museum received federal assistance for an educational program it operated for the East Cleveland school system, and it also operated a library, slide, and various teaching facilities for 80 to 90 Case Western Reserve University students, for which the museum was paid. Id. at 781 n.1.  Based on this evidence, the district court held that the defendant museum qualified as an education activity receiving federal financial assistance.  Id.  This case does not provide support for Plaintiffs' argument that LVH can be held liable under Title IX.  Unlike Piascik, Plaintiffs have not alleged that LVH is a federal funds recipient or that LVH had authority to take corrective measures on behalf of ASD.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUNIOR DOE, et al. | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 06-cv-1926 |
| ALLENTOWN SCHOOL DISTRICT, et al. | : | |
| | : | |
| | : | |
| Defendants | : | |

**ORDER**

AND NOW, this 26th day of February 2009, upon consideration of Plaintiffs' Motion for Leave to File a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a), Defendants' responses, Plaintiffs' Reply consisting of a Proposed Second Amended Complaint, Defendants' Sur-reply briefs, and after having heard oral argument and examined the parties' supplemental submissions, it is hereby ORDERED that Plaintiffs' Motion (Doc. No. 93) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that:

1. Plaintiffs' request to amend the Amended Complaint to include a sexual discrimination and harassment count under Title IX, 20 U.S.C. § 1681 *et seq.*, against Defendant Allentown School District is GRANTED. However, Plaintiffs' request to amend the Amended Complaint to add a claim for punitive damages against Defendant Allentown School District for violations of Title IX, 20 U.S.C. § 1681 *et seq.* is DENIED WITH PREJUDICE. Furthermore, Plaintiffs' request to amend the Amended Complaint to include a sexual discrimination and harassment count under Title IX, 20 U.S.C. § 1681 *et seq.*, against the ASD Individual

Defendants in their individual capacities is DENIED, WITHOUT PREJUDICE, AS MOOT, as this request was withdrawn at oral argument.  Finally, Plaintiffs' request to amend the Amended Complaint to include a sexual discrimination and harassment count under Title IX, 20 U.S.C. § 1681 *et seq.*, against Defendant Lehigh Valley Hospital is DENIED WITHOUT PREJUDICE.

2. Plaintiffs' request to amend the Amended Complaint to include professional negligence counts against Defendants Lehigh Valley Hospital, Margaret Perry, and Kathleen E. Coughlin is GRANTED.  Plaintiffs' request to amend the Amended Complaint to seek punitive damages against Defendant Lehigh Valley Hospital for professional negligence is DENIED, WITHOUT PREJUDICE, AS MOOT, as this request was withdrawn at oral argument.

3. Plaintiffs' request to amend the Amended Complaint to include one general negligence count against minor Defendant F.H. is GRANTED.

4. Plaintiffs' request to amend the Amended Complaint to include one general negligence count against both F.H. Father and F.H. Mother is GRANTED.  After F.H. Father and F.H. Mother are properly served with the Second Amended Complaint, they will be given an opportunity to respond to the claims asserted by Plaintiffs by answering the Complaint or filing an appropriate motion under the Federal Rules of Civil Procedure.

5. Plaintiffs' request to add previously-identified minor, "Nicholas Coe," as an additional party plaintiff with respect to all causes of action through the filing of a Second Amended Complaint is GRANTED.

6. Plaintiffs are directed to file and serve on all parties a Second Amended Complaint consistent with this Order within **ten (10) days** of the date of this Order.

7.  Defendants, excluding F.H. Father and F.H. Mother, shall file a responsive pleading to Plaintiffs' Second Amended Complaint within **twenty (20) days** of being served with the Second Amended Complaint.

BY THE COURT:

*/s/ Thomas M. Golden*
THOMAS M. GOLDEN, J.
