IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUNIOR DOE, et al | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 06-cv-1926 |
| | : | |
| ALLENTOWN SCHOOL DISTRICT, | : | |
| et al | : | |

**MEMORANDUM OPINION**

GOLDEN, J.                                                                                          JULY 8, 2009

Before the Court is the United States' Motion for Leave to Intervene in this action, which was filed on June 18, 2009.  In its Motion, the United States contends that it is entitled to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  Alternatively, the United States argues that the Court should permit intervention on the basis that the United States has satisfied the requirements of permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

The United States seeks to intervene in this case to support the sexual harassment claims asserted by Plaintiffs against Defendant Allentown School District ("ASD" or "School District") pursuant to Title IX of the Education Amendments of 1972.  (See U.S. Proposed Compl. in Intervention ¶ 1); see also 20 U.S.C. § 1681, et seq.  The United States' Proposed Complaint in Intervention is solely against ASD pursuant to Title IX.  (See U.S. Proposed Compl. in Intervention ¶ 2).  ASD is the only Defendant opposing the United States' request to intervene.  For the foregoing reasons, the United States' Motion for Leave to Intervene (Doc. No. 131) is granted.

**FACTUAL BACKGROUND**

The claims in this action arise out of a series of alleged sexual assaults perpetrated by Defendant F.H.—a twelve-year old boy who transferred to Central Elementary School ("CES") in Allentown at the beginning of the 2003 school year—against four first-grade boys in bathroom stalls at CES.  (Second

Am. Compl. ¶¶ 38, 39, 49; Doc. No. 124). The alleged assaults took place between December 2003 and March 2004. (Id. at ¶ 39).[1] Plaintiffs, the four minor victims of these alleged assaults, brought this action against ASD and several other defendants asserting various federal and state law claims. Plaintiffs are asserting two federal claims in this case: (1) one count against various defendants alleging violations of Plaintiffs' constitutional right to bodily integrity pursuant to 42 U.S.C. § 1983 and (2) one count against ASD alleging violations of Title IX. (Id. ¶¶ 69-93).

This case was brought in May 2006. (Doc. No. 1). Plaintiffs subsequently filed a Motion for Leave to File a Second Amended Complaint in an effort to include, among other new claims, a count alleging violations of Title IX. (Doc. No. 93). After extensive briefing and oral argument, the Court granted Plaintiffs' request to include this Title IX count against ASD on February 26, 2009. See Doe v. Allentown Sch. Dist., No. 06-1926, 72 Fed. R. Serv. 3d 1021, 2009 WL 536671, at *3-5 (E.D. Pa. Mar. 2, 2009); (Doc. No. 117). On March 9, 2009, Plaintiffs filed their Second Amended Complaint, which included their Title IX claim against ASD. (Doc. No. 118). Plaintiffs subsequently filed a corrected Second Amended Complaint on April 21, 2009. (Doc. No. 124).

## STANDARD

Pursuant to Rule 24(a)(2), "[o]n timely motion, the court must permit anyone to intervene who...claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Third Circuit Court of Appeals has interpreted Rule 24(a)(2) to require an intervening applicant to prove the following four elements: (1) a timely application for leave to intervene; (2) a sufficient interest

---

[1] For a more detailed description of the facts alleged in this case, see Doe v. Allentown Sch. Dist., No. 06-1926, 2007 WL 2814587, at *1-2 (E.D. Pa. Sept. 21, 2007) (Doc. No. 79).

in the litigation; (3) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and (4) inadequate representation of the prospective intervenor's interest by existing parties to the litigation.  Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998); Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987), cert. denied, 484 U.S. 947 (1987).  "Although these requirements are intertwined, each must be met to intervene as of right."  Harris, 820 F.2d at 596.

## ANALYSIS

The United States has satisfied the four elements necessary to intervene as of right pursuant to Rule 26(a)(2).

### A.      Timeliness of Application

The timeliness of a motion to intervene is determined from all the circumstances by the trial court in the exercise of its sound discretion.  Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369 (3d Cir. 1995).  The Third Circuit Court of Appeals has articulated three factors for district courts to consider in determining whether a motion to intervene is timely: (1) how far the proceedings have gone when the movant seeks to intervene; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay.  Pennsylvania v. Rizzo, 530 F.2d 501, 506 (3d Cir. 1976), cert. denied, 426 U.S. 921 (1976); see also Mountain Top, 72 F.3d at 369.

An analysis of these factors demonstrates that the United States' Motion for Leave to Intervene is timely.  Though this case is over three years old, Plaintiffs' Title IX claim against ASD was only added in March 2009 (Doc. No. 118)—just over three months before the United States filed its request to intervene in support of this claim.  Discovery in this matter has only just begun.  Paper discovery began in May 2009, and depositions are scheduled to commence in July and August 2009.  (ASD Br. at 2).  A Rule 16 Scheduling Conference was conducted on June 18, 2009, and the United States was permitted to participate in this Conference.  (Doc. No. 132).  Additionally, a Scheduling Order was issued on June 30,

2009.  (Doc. No. 136).

As this case is in the early stages of protracted discovery and is not slated for trial until April 2011, any prejudice to ASD is minimal and not, as ASD contends, "severe."  (ASD's Br. at 8).  The United States' intervention poses little threat of interfering with the current discovery schedule set by the parties, especially since the United States' Proposed Complaint in Intervention does not add a new cause of action.  Indeed, the United States asserted during the Court's June 18, 2009 Rule 16 Scheduling Conference that it "was prepared to adhere to any schedule that is set forth by the Court . . . and the parties."  The United States also agreed to meet any deposition dates that have already been set by the parties.  The Court has no reason to disbelieve such statements and will take the United States at its word that its involvement will not delay this case.  In short, ASD's contention that the United States' intervention will further "complicate the discovery [of] an already complicated litigation process" is simply not sufficient to render the United States' intervention either untimely or prejudicial.  (ASD's Br. at 8); see Lopez v. Metro. Gov't of Nashville and Davidson County, No. 07-799, 2008 WL 4831318, at *3-4 (M.D. Tenn. Nov. 4, 2009) (permitting intervention of United States to redress Title IX violations and holding that the United States' intervention request was timely where a comprehensive factual record had already been developed, discovery was almost complete, and the United States asserted that its involvement would not cause any modification of the scheduling deadlines).

**B.      Sufficient Interest in the Litigation**

An applicant for intervention must demonstrate that its interest in the litigation is "a legal interest as distinguished from interests of a general and indefinite character."  Harris, 820 F.2d at 601 (internal quotations omitted).  The Third Circuit has further explained the "sufficient interest" requirement of Rule 26(a)(2): "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote.  Due regard for efficient conduct of the litigation requires that

intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.  The interest may not be remote or attenuated."  See Kleissler, 157 F.3d at 972.

The United States asserts that it has "a direct and substantial interest in ensuring that recipients of federal funds, such as the Allentown School District, do not discriminate on the basis of sex in violation of Title IX."  (U.S. Br. at 3).  The United States further notes that it "plays a central role in the enforcement of Title IX" and "has an interest in ensuring that its enforcement of Title IX in subsequent matters is not undermined by adverse precedent generated in this case."  (Id. at 3-4).  However, ASD asserts that the United States does not have a sufficient interest in this lawsuit, contending that "[t]he allegations in this lawsuit do not involve systemic failure or lack of policy infrastructure"; rather, the United States' Complaint in Intervention only addresses four isolated incidents—incidents which have not been repeated.  (ASD Br. at 4-5).  ASD further cites the fact that the individual ASD Defendants allegedly involved in this matter have ceased working for the School District.  (Id. at 5).

The United States has a sufficient interest in this litigation.  Several courts have held that the proper enforcement of Title IX, by ensuring that the recipients of federal funds do not discriminate on the basis of sex, is a sufficient interest.  Courts have also recognized an interest on the part of the United States to ensure that federal funds are not given to entities that fail to comply with federal anti-discrimination laws.  See, e.g., A.B. v. Rhinebeck Central Sch. Dist., 224 F.R.D. 144, 156-57 (S.D.N.Y. 2004) ("The Government certainly has a legally protectable interest in assuring that all students . . . are protected by Title IX.").  ASD's claim that Plaintiffs' allegations are merely the product of isolated incidents does not undercut the sufficiency of the United States' stated interests.  The United States certainly has an interest in determining whether ASD has policies, either explicitly or implicitly, that foster discriminatory conduct in violation of Title IX.  Notwithstanding ASD's contention that most,

if not all, of the individual ASD Defendants in this case have ceased working for the School District, the existence of alleged discriminatory policies on the part of ASD goes beyond the individual ASD Defendants in this case and broadly implicates the School District's culture of Title IX compliance.  The United States' interest in this case is further supported by the fact that Congress has delegated to federal departments and agencies both the authority to promulgate regulations to implement Title IX and the responsibility to ensure that recipients of federal funds comply with the statute and its regulations.  See 20 U.S.C. § 1682.

**C.      Threat that Interest Will Be Impaired By Disposition of the Action**

"In order to prove an interest is impeded, the third part of the intervention test, the applicant must demonstrate a tangible threat to its legal interest."  United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1185 n.15 (3d Cir. 1994) (internal quotations omitted).  In other words, a proposed intervenor must demonstrate that his or her interest "*might* become affected or impaired, as a practical matter, by the disposition of the action in [his or her] absence."  See Mountain Top, 72 F.3d at 368 (citing Alcan Aluminum, Inc., 25 F.3d at 1185 n.15).

The United States has demonstrated that its interest might be impaired by the disposition of this action if the United States is not permitted to intervene.  ASD argues that the United States need not be involved in this case because the "United States can do an investigation and receive the materials it seeks without the need to intervene."  (ASD Br. at 5).  However, whether the United States has an alternative avenue is not the standard for intervention; rather the Court must focus on the impairment of the United States' interests absent intervention.  See Lopez, 2008 WL 4831318, at *5 ("[W]hether or not there is any alternative avenue for the movant is not the standard, but rather whether the movant's interest may be impaired absent intervention.").  Here, among the other interests discussed above, the United States' interest in *stare decisis* may be undermined in the absence of the United States' involvement in this case.

As one court has concluded, "an adverse judgment could interfere with the Government's ability to enforce Title IX . . . particularly in cases where a school district's response to allegations of sexual harassment proves inadequate to stop the harassment from continuing." See A.B., 224 F.R.D. at 157; see also Brody v. Spang, 957 F.2d 1108, 1123 (3d Cir. 1992) ("[T]his factor may be satisfied if, for example, a determination of the action in the applicants' absence will have a significant *stare decisis* effect on their claims . . . ."); Harris, 820 F.2d at 601 ("Courts thus have found that an applicant has a sufficient interest to intervene when the action will have a significant *stare decisis* effect on the applicant's rights . . . .").

**D.      Adequacy of Representation of United States' Interest by Existing Parties**

As to whether Plaintiffs will adequately represent the United States' interests in the absence of intervention by the United States, this element "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." Mountain Top, 72 F.3d at 368 (quoting Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972)).  "[T]he burden of making that showing should be treated as minimal." Id. (quoting Trbovich, 404 U.S. at 538 n.10).  A prospective intervenor's rights "are not adequately represented where: (1) the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention to the applicant's interest; (2) there is collusion between the existing parties; or (3) the representative party is not diligently prosecuting the suit." Alcan Aluminum, Inc., 25 F.3d at 1185 n.15; see also In re Comty. Bank of N. Va., 418 F.3d 277, 315 (3d Cir. 2005) (noting that there is a presumption of adequate representation).

The United States does not argue that there is collusion between the existing parties or that Plaintiffs are not diligently prosecuting their case.  Thus, the question before the Court is whether the interests of Plaintiffs and the United States diverge sufficiently such that Plaintiffs cannot devote proper attention to the United States' interests.  Though the United States and Plaintiffs present similar, if not

identical, Title IX claims, "[t]he 'tactical similarity' of the 'legal contentions' of a current party with that of a proposed intervenor . . . does not assure adequate representation."  See Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir. 1992).

The United States has demonstrated that the existing parties to the litigation will inadequately represent the United States' interests in this suit.  Governmental entities have litigation interests that are inherently different from the interests of private litigants, as governmental entities intervene to protect the interests of a broad constituency of citizens.  See id. (discussing State's interests versus interests of private parties).  Plaintiffs only represent their individual interests and do not necessarily have an interest to compel ASD to engage in comprehensive corrective measures.   See A.B., 224 F.R.D. at 157 ("The Plaintiffs, despite alleging a pattern of on-going sexual harassment, only represent their individual interests.").  Conversely, the United States represents the public in its totality and has a broad interest in ensuring that school districts that receive federal funds comply with Title IX prospectively.  See Sierra Club v. Espy, 18 F.3d 1202, 1208 (5th Cir. 1994) ("The government must represent the broad public interest, not just the economic concerns of the timber industry.").

Plaintiffs are not seeking equitable relief under Title IX.  As a result, in the event Plaintiffs are successful in the absence of intervention by the United States, this lawsuit will not result in ASD being compelled to implement corrective action that would ensure that students are protected from discriminatory practices.  The United States' Complaint in Intervention, however, seeks equitable relief, thereby requiring ASD—if it acted unlawfully—to implement systemic changes that will protect ASD's students from unlawful discrimination and harassment.  ASD notes that "Plaintiffs are not barred from seeking injunctive relief."  (ASD Br. at 6).  While this may be the case, Plaintiffs are seeking no such relief, which itself is indicative of the differing interests held by Plaintiffs and the United States.  Accordingly, the United States has met its minimal burden under this element of Rule 24(a)(2).  See

A.B., 224 F.R.D. at 157 (noting that disposition without the involvement of the United States "could impair the Government's interest in preventing further discrimination by the District because the private Plaintiffs could agree to settle this action for money damages without seeking the type of institutional changes by the District that the Government considers necessary to ensure that students are protected from unlawful discrimination and harassment in the future"); Lopez, 2008 WL 4831318, at *6 (noting that "the plaintiff may understandably concentrate on seeking compensatory damages—either through litigation or settlement—to the potential detriment of claims for injunctive relief").

In conclusion, the United States is permitted to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. As addressed above, the Court takes the United States at its word that it is prepared to comply with all scheduling deadlines set forth by the Court. See Fed. R. Civ. P. 24 advisory committee's note (1966) (noting that intervention as of right "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings"). Because the United States has established the elements necessary for intervention as of right pursuant to Rule 24(a)(2), the Court need not address permissive intervention under Rule 24(b).

An appropriate Order will be docketed.